IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Tiz, Inc. d/b/a Provi,<br><br>    Plaintiff,<br><br>  v.<br><br>Southern Glazer's Wine and Spirits, LLC and Republic National Distributing Company, LLC,<br><br>    Defendants. | Case No. 1:22-CV-1648<br><br>Judge Franklin U. Valderrama<br>Magistrate Judge Laura K. McNally |

## DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL

Defendant Southern Glazer's Wine and Spirits, LLC ("Southern") respectfully requests that this Court enter an Order compelling Plaintiff Tiz, Inc. d/b/a Provi ("Provi") to supplement its deficient response to Southern's Interrogatory No. 6. Fed. R. Civ. P. 37(a)(3)(B)(iii).

Provi alleges it was harmed by Defendants' independent decisions not to work with Provi because customers who were submitting alcohol orders for Defendants' products through Provi stopped doing so. Compl. ¶ 85 (ECF No. 1) ("Provi's National Accounts customers and prospective customers were forced to stop working with or exploring a relationship with Provi as a result of Defendants' boycott of the company and related conduct."). Provi specifically calls out the loss of National Accounts, which

1

it identifies as "[r]etailers with numerous (typically more than 50) locations throughout the country . . . such as bar, restaurant, and hotel chains." *Id.* ¶ 75; *see also id.* ¶ 122 ("Over a dozen different National Accounts stopped working with Provi on a nationwide basis or put their plans on hold, citing Provi's inability to place orders with Southern and RNDC as a reason for not moving forward."). To understand the basis for these allegations, Southern issued Interrogatory No. 6. to Provi:

> Identify all National Accounts, or other customers or potential customers, that (a) "stopped working with Provi on a nationwide basis or put their plans on hold, citing Provi's inability to place orders with [SGWS] and RNDC as a reason for not moving forward" as alleged in paragraph 122 of the Complaint, or that (b) "were forced to stop working with or exploring a relationship with Provi as a result of Defendants' boycott of the company and related conduct," as alleged in paragraph 85 of the Complaint, including the date each National Account, customer, or potential customer stopped working with or exploring a relationship with Provi, and the specific facts and circumstances surrounding each National Account's, customer's, or potential customer's decision, as known by Provi.

Ex. A at 13 (11/8/24 Pl.'s Am. Resps. and Objs. to Def. Southern Glazer's Wine and Spirits, LLC's First Set of Interrogs.).

Provi's initial response failed to answer Interrogatory No. 6 at all and stated that Provi would produce documents pursuant to Fed. R. Civ. P. 33(d). Ex. A at 14. After Southern pointed out that a response under Fed. R. Civ. P. 33(d) was insufficient to answer the interrogatory, Provi amended its response. *Id.* Provi's amended response remains deficient for two reasons.

*First*, Provi's amended response to Interrogatory No. 6 identifies a single list of National Accounts that "cit[ed] Provi's inability to place orders with Southern and RNDC" as the reason for one of the following changes in behavior: (1) "stopped placing orders with Provi," (2) "reduced orders with Provi," or (3) "stopped exploring a relationship with Provi." Ex. A at 14-15. This response is insufficient because it fails to identify which National Accounts fall into each category. This information is necessary for Defendants to know the nature of harm Provi alleges. The harm from a National Account that allegedly stopped working with Provi is different from the harm from an account that reduced orders. That in turn is different from an account that allegedly "stopped exploring a relationship," which is far more speculative.

Southern is entitled to information in Provi's knowledge and control about the harm it allegedly suffered. *Gebka v. Allstate Corp.*, 2021 WL 825612, at *6 (N.D. Ill. Mar. 4, 2021) (granting motion to compel party "to amend its answers to interrogatories . . . [and] to incorporate and reflect all responsive information it obtains . . . and all other sources under its control"); *Gevas v. Dunlop*, 2020 WL 814875, at *1 (N.D. Ill. Feb. 19, 2020) ("A responding party must include in its answer all information within its knowledge or control."). Provi alleged harm to "[o]ver a dozen National Accounts" in its complaint, Compl. ¶ 122, and identified specific accounts in its response. Provi should have records of whether those specific accounts were ever Provi customers and if they were whether they completely stopped doing business with Provi or simply reduced their business. Indeed, Provi's response identifies specific accounts that

3

"resumed placing orders with Provi" after stopping. Ex. A at 15. If it can do that, Provi can also identify which National Accounts fall into each category of harm it identifies.

Provi's reasons for refusing to supplement its response to Interrogatory No. 6 ignore Southern's specific ask. Provi claims in the Joint Status Report (though not in its interrogatory response) that there are "tens of thousands" of customers that stopped working with or exploring a relationship with Provi "because of [D]efendants' boycott" and that the interrogatory "requires Provi to marshal substantial portions of its impact and damages evidence in a single response." Joint Status Report at 8 (ECF No. 113). Provi will have to identify evidence to support this allegation, but at this time Southern is not asking for Provi to identify all of these customers. Instead, Southern has asked that Provi explain the nature of the alleged harm from the loss of (or reduced orders from) the 38 National Accounts that *Provi has already identified*. Provi gives no reason for refusing to provide this information other than to say that the interrogatory does not require Provi to explain "how each identified customer curtailed any relationship with Provi." *Id.* at 9. That is incorrect. The interrogatory asks Provi to identify the "the specific facts and circumstances surrounding each National Account's . . . decision," which starts with explaining what each National Account's decision *was*—whether each account stopped placing orders with Provi, reduced its orders with Provi, or stopped exploring a relationship with Provi in the first place. Ex. A at 14.

*Second*, in addition to identifying specific National Accounts that "cit[ed] Provi's inability to place orders with Southern and RNDC," Provi's response claims there are

4

"other independent customers" that changed their behavior "*based on* Provi's inability to place orders with Southern and RNDC . . . ." Ex. A. at 14-15 (emphasis added). Southern does not understand the distinction Provi is making between these two categories. How does Provi know customers changed their behavior "based on" Provi's inability to place orders with Southern and RNDC if they did not cite that inability to Provi? Is Provi assuming this was the cause? Provi separately claims in its response that there are customers that changed their behavior "*at the time* that SGWS and RNDC representatives began their illegal boycott, stopped fulfilling orders placed through Provi, and informed retail customers of their refusal to fulfill customer orders." Ex. A at 15 (emphasis added). Provi does not explain how this third category is different from the second. Does Provi have any additional basis, other than timing, to believe there are customers that changed their behavior "based on" Defendants' actions, but did not "cite" Defendants' actions? Provi's vague response to Interrogatory No. 6 fails to fully answer and is thus deficient.

For the reasons above, Southern respectfully requests that this Court enter an Order compelling Provi to supplement its response to Interrogatory No. 6 to address these issues.

5

Dated: November 22, 2024 　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ K. Ross Powell

James H. Mutchnik, P.C. (ARDC #6201681)
Kaitlyn Coverstone (ARDC #6326755)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
jmutchnik@kirkland.com
kaitlyn.coverstone@kirkland.com

Craig S. Primis (admitted *pro hac vice*)
Elyse Dorsey (admitted *pro hac vice*)
K. Ross Powell (admitted *pro hac vice*)
Catie Ventura (ARDC #6312589)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, NW
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
craig.primis@kirkland.com
elyse.dorsey@kirkland.com
ross.powell@kirkland.com
catie.ventura@kirkland.com

*Attorneys for Defendant Southern Glazer's Wine and Spirits, LLC*

6

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2**

The undersigned counsel hereby certifies that, prior to filing this motion, they have engaged in good faith efforts to resolve the discovery dispute at issue through consultation with opposing counsel, by virtual conference, on October 2, 2024, at 9:00 a.m. (ET). The parties participating in the consultation were: Catie Ventura, Kaitlyn Coverstone, K. Ross Powell, Jillian Hewitt, Richard W. Hess, and other colleagues supporting counsel.

Despite these efforts, the parties were unable to reach an agreement regarding the request to Provi to supplement its deficient response to Southern's Interrogatory No. 6.

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

1. This brief complies with the type-volume limitation of Local Rule 7.1 because, according to the "word count" function of Microsoft 365, Word Version 2402, the Brief contains 1,181 words, excluding the parts of the brief exempted from the word count.

2. This brief complies with the typeface and size requirements of Local Rule 7.1 because the brief has been prepared in a proportionally spaced typeface using Microsoft 365, Word Version 2402 in 14-point Garamond font.

## **CERTIFICATE OF SERVICE**

I certify that on November 22, 2024, I caused a copy of the foregoing document to be served by the ECF System for the U.S. District Court for the Northern District of Illinois.

*/s/ K. Ross Powell*
K. Ross Powell